UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>        Defendant. | Civil Action No. 1:23-cv-2513 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeks the immediate release of records from the U.S. Department of State concerning the influence of foreign state actors over the development and enforcement of online platforms' content moderation policies abroad.

2.      Over the last several years, the world's most popular online platforms have come under increasing pressure from foreign state actors to suppress lawful speech and prioritize state-endorsed narratives on their services. For example, in India—a country with nearly 1.4 billion people—the government has repeatedly pressured platforms to suppress speech with which it disagrees, in one instance raiding Twitter's offices in response to supposed misinformation tweeted by the government's political opponents. *See* Lauren Frayer & Shannon Bond, *India And Tech Companies Clash Over Censorship, Privacy And 'Digital Colonialism'*, Nat'l Pub. Radio (June 10, 2021), https://perma.cc/5RXG-N4G8. In 2020, then–President of the Philippines Rodrigo Duterte publicly lashed out at Facebook for removing a network of fake accounts the company had linked to the military and police, stating, "We allow you to operate here hoping you could help us

. . . what would be the point of allowing you to continue if you can't help us?" *See Phillipines' Duterte calls out Facebook after accounts taken down*, Reuters (Sept. 28, 2020), https://perma.cc/CN3L-2ZTV. The following year, Brazilian President Jair Bolsonaro issued rules prohibiting social media platforms from removing certain content, including his own false claims that he could lose the 2022 election only if the vote were rigged. *See* Jack Nicas, *Brazil's President Bans Social Networks From Removing Some Posts*, N.Y. Times (Sept. 9, 2021), https://perma.cc/Q6ZE-RGHQ.

3. Because most of these platforms are based in the United States, U.S.-based companies effectively play a central role in the governance of online expression around the globe.

4. State efforts to pressure online platforms to suppress lawful speech, or to publish state-endorsed narratives, raise significant human rights concerns. Under Article 19 of the Universal Declaration of Human Rights and other international and regional human rights instruments, governments have an obligation to respect freedom of expression. Despite this obligation, a number of governments have attempted to coerce online platforms into censoring disfavored speech or publishing government propaganda. This practice threatens to distort public discourse to anti-democratic ends, stifle the free flow of independent news and information to the public, and insulate political leaders from public criticism and dissent in the international community.

5. The executive branch has identified the promotion of internet freedom around the world as a top priority of its foreign policy, but there is little public information regarding whether or how it has advised or supported online platforms in resisting foreign state pressure to facilitate online repression. The State Department recently announced the formation of its first Bureau of Cyberspace and Digital Policy, which "leads and coordinates the Department's work on

cyberspace and digital diplomacy to encourage responsible state behavior in cyberspace and advance policies that protect the integrity and security of the infrastructure of the Internet, serve U.S. interests, promote competitiveness, and uphold democratic values." *See* U.S. Dep't of State, *Bureau of Cyberspace and Digital Policy*, https://www.state.gov/bureaus-offices/deputy-secretary-of-state/bureau-of-cyberspace-and-digital-policy/. The State Department has not publicly stated, however, whether it has taken any measures—through this newly created Bureau or otherwise—to advise or assist U.S.-based platforms in upholding democratic values against foreign-state suppression of lawful expression.

6. To help the public learn more about whether and how the State Department advises online platforms regarding foreign state influence over the development and enforcement of their content moderation policies, the Knight First Amendment Institute at Columbia University ("Plaintiff" or "Knight Institute") submitted a FOIA request ("the Request") to the State Department on December 9, 2022. The Knight Institute has yet to receive any records or even a response within the meaning of FOIA; the State Department has stated only that it does not anticipate "complet[ing]" the Request until June 30, 2025.

7. The Knight Institute now files this suit because Defendant has failed to process and release records responsive to the Request within the timeline mandated by FOIA. The Knight Institute seeks the injunctive relief necessary to ensure Defendant's timely compliance with FOIA's requirements.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

3

## PARTIES

10. The Knight First Amendment Institute at Columbia University is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Public education is essential to the Knight Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the Knight Institute's core activities. The Knight Institute is a "person" within the meaning of 5 U.S.C. § 551(2).

11. Defendant State Department is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f). The State Department has possession and control over the requested records.

## FACTUAL ALLEGATIONS

### *The FOIA Request*

12. On December 9, 2022, the Knight Institute submitted the Request to the State Department seeking the following records:[1]

> a. Correspondence between any online platform and the U.S. Department of State regarding:
>
> > (i) the development or modification of the online platform's jurisdiction-specific content moderation policies;
> >
> > (ii) any request made by a foreign state actor to the online platform to suppress content on its services;
> >
> > (iii) any request made by a foreign state actor to republish, amplify, or prioritize content on its services; or
> >
> > (iv) any specialized or exclusive process or mechanism through which a foreign state actor can flag, or request that the online platform remove or demote, specific user content or accounts.

---

[1] A true and correct copy of the Request is attached hereto as Exhibit A.

    b. Correspondence between the U.S. Department of State and any foreign state actor regarding:

        (i) the development or modification of the online platform's jurisdiction-specific content moderation policies;

        (ii) any request made by a foreign state actor to republish, amplify, or prioritize content on its services; or

        (iii) any request made by a foreign state actor to republish, amplify, or prioritize content on its services; or

        (iv) any specialized or exclusive process or mechanism through which a foreign state actor can flag, or request that the online platform remove or demote, specific user content or accounts.

    c. All records relating to how the U.S. Department of State addresses communications from online platforms regarding foreign state efforts to influence their content moderation policies or enforcement actions, including but not limited to all manuals, memoranda, policies, procedures, practices, instructions, training materials, e-mails, handouts, and Powerpoint presentations that explain or provide guidance to U.S. Department of State personnel or online platform personnel.

    d. All records relating to foreign statutes or regulations that have been discussed, proposed, passed, or enacted by a foreign government intended to influence online platforms' rules regarding expression of political dissent.

    e. All records related to any action taken by a foreign state or its representatives to pressure an online platform to sup- press lawful speech or to publish or promote speech favorable to the foreign government, including the use of any extralegal measures targeting the online platform.

    f. All records indicating the number of cases in which the U.S. Department of State directed, or otherwise provided guidance to, an online platform regarding the platform's compliance with any request by a foreign state actor to suppress speech on the platform's services, including but not limited to periodic datasets, logs, and/or reports.

13. The Knight Institute requested expedited processing of the Request on the ground that it is an organization "primarily engaged in disseminating information" and there is a "compelling need" for the records sought because they contain information "urgent[ly]" needed "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

14. The Knight Institute requested a waiver of document search, review, and duplication fees on the grounds that (a) disclosure of the requested records is in the public interest

5

and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," *id*. § 552(a)(4)(A)(iii); (b) the Knight Institute is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use, *id*. § 552(a)(4)(A)(ii)(II); and (c) the Knight Institute is an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use, *id*.

### *Agency Response*

15. By email dated December 13, 2022, the State Department stated that it had received the Request as of December 9, 2022, assigned the Request reference number F-2023-02663, and placed the Request in the "complex processing track."[2] The State Department denied the Knight Institute's request for expedited processing and stated that it would make a determination regarding Plaintiff's request for a fee waiver at a later date. The State Department also stated that "Th[e] Office will not be able to respond within the 20 days provided by the statute due to 'unusual circumstances,'" specifically "the need to search for and collect requested records from other Department offices or Foreign Service posts." The email informed the Knight Institute that it could contact the FOIA Requester Service Center or FOIA Public Liaison if it "[has] any questions regarding [the] request, would like to narrow the scope or arrange an alternative time frame to speed its processing, or would like an estimated date of completion."

16. On January 4, 2023, the Knight Institute sent an email to the State Department's FOIA Requester Service Center requesting an estimated date of completion for the Request.[3] On January 5, 2023, the State Department responded via email that the Request "is in process and has

---

[2] A true and correct copy of the email is attached hereto as Exhibit B
[3] A true and correct copy of the email is attached hereto as Exhibit C.

6

an estimated date of completion of June 30, 2025."[4] The email asserted that "the Department currently has a backlog of FOIA requests and is working through it as quickly as possible."

17. On January 23, 2023, the Knight Institute sent an email to the State Department's FOIA Requester Service Center inquiring whether it would "be possible to arrange an alternative time frame for processing the request." On January 24, 2023, the State Department responded via email that "the Department processes requests on a first-in, first-out basis," and that "the June 30, 2025, estimated date of completion (EDC) that was provided . . . is the date that was determined for [the] request."[5] The State Department further stated that "EDCs are estimates and are subject to change," and that the Knight Institute "may possibly receive a response sooner." Finally, the State Department stated that "the current EDC is not based upon the 'contents' of [the] request. It is based upon the Department's current backlog of FOIA requests. Therefore, there will be a delay in processing requests."

18. To date, the State Department has not informed the Institute whether it has responsive records, nor has it released any records responsive to the Request or adequately explained its failure to do so.

19. Under FOIA, an agency has twenty working days to respond to a request. *See* 5 U.S.C. § 552(a)(6)(A)(i). If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. *Id*. § 552(a)(6)(B)(i).

20. More than 60 days have passed since the Knight Institute filed this Request. Thus, these statutory time periods have elapsed, and Plaintiff has therefore adequately exhausted its administrative remedies.

---

[4] A true and correct copy of the email is attached hereto as Exhibit D.
[5] A true and correct copy of the email is attached hereto as Exhibit E.

## CAUSES OF ACTION

21. Defendant's failure to grant Plaintiff's request for expedited processing violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendant's corresponding regulations.

22. Defendant's failure to process the Request as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendant's corresponding regulations.

23. Defendant's failure to make and communicate a determination whether to comply with the Request within the statutory time limit violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendant's corresponding regulations.

24. Defendant's failure to make records responsive to the Request promptly available violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendant's corresponding regulations.

25. Defendant's failure to grant Plaintiff's request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4)(A), and Defendant's corresponding regulations.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Order Defendant to conduct a thorough search for records responsive to Plaintiff's request;

B. Order Defendant to immediately process and release any responsive records;

C. Award Plaintiff its reasonable costs and attorneys' fees incurred in this action; and

D. Grant such other and further relief as the Court may deem just and proper.

March 24, 2023

Respectfully submitted,

/s/ *Alex Abdo*
Alex Abdo

        Knight First Amendment Institute
         at Columbia University
        475 Riverside Drive, Suite 302
        New York, NY 10115
        (646) 745-8500
        alex.abdo@knightcolumbia.org

*Counsel for Plaintiff*